UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN RIVERA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:22-cv-10654-IT |
| | * |
| CAROL MICI, *Commissioner of Correction,* | * |
| *in her individual and official capacities*, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

September 26, 2023

TALWANI, D.J.

Plaintiff Jonathan Rivera, proceeding *pro se*, brings § 1983 claims against Carol Mici, Commissioner of the Massachusetts Department of Correction (the "DOC") for alleged constitutional violations related to prison disciplinary proceedings he was subjected to while in custody at the North Central Correctional Institution ("NCCI"). See Am. Compl. [Doc. No. 32]. Now pending is Mici's Motion to Dismiss [Doc. No. 33]. For the reasons set forth below, Mici's Motion to Dismiss [Doc. No. 33] is GRANTED.

I.  **Factual Background as Alleged in the Amended Complaint [Doc. No. 32]**

On January 24, 2022, Lieutenant Christopher Phelps searched Rivera's assigned cell at NCCI. Am. Compl. ¶ 6 [Doc. No. 32]. Lieutenant Phelps reported in a disciplinary ticket that he found a "plastic toothbrush, that was a sharpened to a point and approximately five inches in length" in the cell's stand-up locker. Id. Rivera was then placed in a restrictive housing unit. Id.

Rivera timely filed a request for evidence with the disciplinary officer. Id. at ¶¶ 9, 14. Specifically, Rivera asked for (1) access to the security video footage of the stand-up locker, (2) documentation of any staff or inmate with knowledge of the events leading up to the incident,

with a supplemental request for time to question these witnesses, and (3) DNA testing of the alleged weapon. Id. at ¶14. The disciplinary officer deemed the evidence to be irrelevant and denied Rivera's request. Id. at ¶ 8.

On February 23, 2022, Rivera had a disciplinary hearing where he was represented by privately retained counsel. Id. at ¶¶ 1, 22. The Department of Corrections' disciplinary process is governed by 103 C.M.R. 430, and infractions are categorized by severity on a scale of one to four, with category one encompassing the most severe violations. Id. at ¶¶ 2, 4. Prison officials can impose established sanctions, including, but not limited to, placement in segregation, loss of telephone privileges, loss of visitation, and loss of good time. Id. at ¶ 3.

At the disciplinary hearing, the reporting staff member, who was a high-ranking investigator with the Inner Perimeter security unit, testified that the sharpened toothbrush was not found in the stand-up locker location, but rather in another location not mentioned in the report. Id. at ¶ 14. The reporting staff member also testified that it was possible that another inmate placed the alleged weapon in Rivera's assigned area because the area was not secured by Rivera. Id. The Hearing Officer deemed the reporting officer's testimony and initial report to be true and credible, and found Rivera guilty of a Category 1/08 infraction for "possession, manufacture, or introduction of any gun, firearm, weapon, sharpened instrument, knife or poison, or any component thereof." Id. at ¶ 5.[1] As a result, Rivera was subject to sanctions, namely "loss of privileges" for 120 days, including telephone restrictions. Am. Compl. Ex. 1 (showing sanctions as "LOP" for "120 units") [Doc. No. 32-1]. Rivera appealed the decision to the highest

---

[1] Three other code violations were dismissed. See Am. Compl., Ex. 1 [Doc. No. 32-1].

level of review; his appeal was denied on March 10, 2022. Am. Compl. ¶ 19 [Doc. No. 32], Ex. 1 [Doc. No. 32-1].

## II.     Procedural Background

On April 29, 2022, Rivera filed his initial Complaint [Doc. No. 1]. Mici filed a Motion to Dismiss [Doc. No. 19], and when Rivera did not respond, the court issued an Order to Show Cause [Doc. No. 23] why the action should not be dismissed for failure to state a claim. In response, Rivera filed a Motion for Leave to Amend [Doc. No. 24]. The court granted leave and denied the Motion to Dismiss [Doc. No. 19] without prejudice. Elec. Order [Doc. No. 26].

Rivera filed the Amended Complaint [Doc. No. 32], alleging civil rights violations against Mici in both her individual and official capacities, and Mici filed a renewed Motion to Dismiss [Doc. No. 33] for failure to state a claim. When Rivera did not respond, the court again issued an Order to Show Cause [Doc. No. 35] why the action should not be dismissed for failure to state a claim. Rivera filed a Response to Order to Show Cause and Mici's Motion to Dismiss [Doc. No. 38], which the court interprets as Rivera's opposition to the motion to dismiss.[2,3]

---

[2] Rivera's Response to Order to Show Cause and Mici's Motion to Dismiss [Doc. No. 38] also included a request for appointment of counsel. A court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Because a civil party lacks a constitutional right to free counsel, however, there is no mandate that a court request pro bono counsel. See DesRosiers v. Moran, 949 F.2d 5, 15, 23 (1st Cir. 1991). In determining whether to request counsel, the court considers whether the requesting party is indigent and whether exceptional circumstances exist such that the denial of counsel will result in fundamental unfairness impinging upon the party's due process rights. Id. In assessing whether exceptional circumstances exist, the court examines the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. Id. On review of the Amended Complaint [Doc. No. 32], the court finds no exceptional circumstances to warrant the appointment of pro bono counsel and denies the request.

[3] The Response to Order to Show Cause and Mici's Motion to Dismiss [Doc. No. 38] also alleged additional facts. To the extent that Rivera attempts to rely on additional facts beyond those alleged in the Amended Complaint [Doc. No. 32], those facts are not properly before the court.

Several days later, Rivera filed a document entitled Cause of Action [Doc. No. 39], which Mici opposed, see Opp. to Pl's Cause of Action [Doc. No. 40]. On March 24, 2023, Mici filed a Reply to Plaintiff's Responses to Order to Show Cause [Doc. No. 41] in support of her motion to dismiss.

### III.     Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

In general, a complaint filed *pro se* is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that *pro se* plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

## IV.     Section 1983 Claims

Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). "[S]econd, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Id. Rivera alleges that his Fourteenth Amendment due process rights were violated when he was denied access to evidence for his disciplinary hearing, denied telephone privileges, and placed in segregated housing. Am. Compl. ¶ 21 [Doc. No. 32]. Rivera also alleges that his Eighth Amendment rights were violated where the loss of telephone access and placement in the Restrictive Housing Unit constituted cruel and unusual punishment. Id. Rivera seeks damages in the amount of his attorney's fees for the disciplinary hearing, recovery of costs associated with this action, and "Directive and/or Declaratory Relief . . . for the unconstitutionality of the disciplinary process claims in this action, and rectification of such claims." Id. at ¶¶ 25-27.

### A.     *Liability*

#### 1.     Official Capacity Claims

As an initial matter, Rivera's § 1983 claims for damages against Mici in her official capacity are barred as a matter of law. "[N]either a state agency nor a state official acting within his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). Further, to the extent that Rivera seeks declaratory relief for past harm, such relief is also barred by sovereign immunity. See Papasan v. Allain, 478 U.S. 265, 278 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in

5

his official capacity that was illegal under federal law is barred even when the state official is the named defendant"); see also Wilson v. Brown, 889 F.2d 1195, 1197 n.4 (1st Cir. 1989) ("[I]t is well settled that while prospective injunctive relief is permissible, retrospective relief is barred [by the Eleventh Amendment].") (citing Edelman v. Jordan, 415 U.S. 651, 651, 668 (1974)).

However, state officials may be sued in their official capacities for prospective injunctive relief. See Papasan, 478 U.S. at 277–78; Whalen v. Mass. Trial Court, 397 F.3d 19, 29-30 (1st Cir. 2005). To the extent Rivera seeks "directive and/or declaratory relief" related to future implementation of the inmate disciplinary policies, see Am. Compl. ¶ 27 [Doc. No. 32], Rivera's claims for declaratory relief against Mici in her official capacity are not barred by sovereign immunity principles.

2. Supervisory Liability

Rivera argues that Mici is liable as the final authority for inmate disciplinary procedures, and therefore liable for the actions of her subordinates. Am. Compl. ¶ 20 [Doc. No. 32]. Mici argues that any claim premised on supervisory liability must fail where Rivera does not sufficiently allege any specific conduct by Mici. Mot. to Dismiss Mem. 5-8 [Doc. No. 34].

As a general matter, a supervisor is not automatically liable under § 1983 for the misconduct of their supervisees. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). Rather, "[p]ublic officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 16 (1st Cir. 2011) (quoting Rodríguez–García v. Miranda–Marín, 610 F.3d 756, 768 (1st Cir. 2010)). That is, "the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights," and that "the

[supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.2008)).

Under a deliberate indifference theory of supervisory liability, "the plaintiff must show (1) that the officials had knowledge of facts, from which (2) the officials can draw the inference (3) that a substantial risk of serious harm exists." Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (quoting Guadalupe-Báez, 819 F.3d at 515) (internal quotation marks omitted). "[E]ven if the complaint contains facts plausibly showing deliberate indifference, the plaintiff must also allege facts giving rise to a causal nexus between the supervisor's acts or omissions and the subordinate's misconduct." Id. "In addition to deliberate indifference and causation, the plaintiff must allege facts showing that the supervisor was on notice of the subordinate's misconduct." Id. "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Even if Rivera had established that that one of Mici's subordinates violated his constitutional rights, Rivera does not sufficiently state any action or inaction by Mici related to that misconduct. Rivera's basis for his claim rests solely based on Mici's position as DOC Commissioner, see Am. Compl. ¶ 20 [Doc. No. 32], and Rivera does not allege any facts to suggest his injury resulted from Mici's direct acts or omissions. Rivera also fails to show that Mici had any knowledge of the actions taken regarding his disciplinary process such that she could draw the inference that Rivera's constitutional rights were being infringed, or that a substantial risk of harm existed.

Further, the Hearing Officer's decision to deny Rivera's request for evidence was an isolated use of his permitted discretion, and Rivera has not alleged facts sufficient to show that this incident was indicative of a violative policy or custom that Mici knew of, approved of, or ignored. As an isolated incident, the Hearing Officer's decision to deny Rivera's request for evidence is insufficient to establish that Mici acted with deliberate indifference. Maldonado-Denis, 23 F.3d at 582.

Rivera also asserts that subsection 14(15) of 103 C.M.R. 430 allows for biased favoritism towards DOC staff in disciplinary procedures. Am. Compl. ¶ 12 [Doc. No. 32]. Therefore, Rivera argues, Mici, is responsible for derivative constitutional violations by implementing and failing to correct, amend, or remove the offending subsection. Id. at¶ 20.. Rivera further contends that Mici is liable for the hiring of impartial disciplinary staff. Id. Although supervisor liability may be established if the supervisor formulated a policy or engaged in a custom that led to a constitutional violation, see Perry v. Dickhaut, 125 F. Supp. 3d 285, 298 (D. Mass 2015), Rivera has similarly failed to allege that the "offending conduct of [Mici]… manifest[ed], at a minimum, a deliberate indifference to the constitutional rights of the third party," McIntyre v. United States, 336 F. Supp. 2d 87, 127 (D. Mass. 2004).

"Absent evidence of an unconstitutional . . . policy, a single incident of misconduct cannot provide the basis for . . . liability under § 1983." Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003). Here, Rivera has alleged misconduct as it related to his disciplinary procedures, but he has not alleged facts that go to the unconstitutionality of the policies. The Supreme Court has awarded significant discretion to prison officials for handling evidence in disciplinary hearings based on the rationale that prison officials need to "keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as

8

well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff v. McDonnell, 418 U.S. 539, 566–67 (1974). While the Supreme Court encouraged committees to state the reason for refusing to call a witness "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases," the Court did not require prison officials provide a reason or explanation for refusing to call a witness. Id. at 567 ("[W]e stop short of imposing a more demanding rule with respect to witnesses and documents."). Thus, even if it were established that Mici was responsible for making and sustaining the policy, the policy itself is not unconstitutional. Id. at 566–67 ("[Prison officials] must have the necessary discretion without being subject to unduly crippling constitutional impediments").

Where Rivera does not allege any acts or omissions by Mici related to alleged constitutional violations, or that Mici was deliberately indifferent to a constitutional violation, Rivera does not sufficiently state a claim against Mici based on supervisory liability.

  B. *Constitutional Violations*

Even if Rivera had plausibly alleged that Mici was subject to liability, he has failed to state a claim that his constitutionally protected rights were violated under the Fourteenth or Eighth Amendments.

   1. Due Process

Rivera alleges that he was denied the opportunity to access and present evidence, and as a result was subject to a 120-day loss of privileges, including a temporary phone restriction, and was placed in restrictive housing, both of which caused him to suffer mental anguish. Am.

9

Compl. ¶¶ 10, 16, 23, 24 [Doc. No. 32].[4] Mici asserts that neither the phone restriction nor the placement in segregated housing is a protected interest,[5] and that Rivera was afforded due process. Mot. to Dismiss Mem. 8-11 [Doc. No. 34].

To succeed on a procedural due process claim, a plaintiff must demonstrate (1) that he has been deprived of a protected interest and (2) that the deprivation was accomplished without due process of law. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). In the prison context, a protected liberty interest is defined as a change that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Rivera's placement in restrictive housing does not rise to the level of a protected interest on which to premise a due process violation. Inmates do not have a constitutional right to remain in the general prison population or to be free from administrative segregation. Rodi v. Ventetuolo, 941 F.2d 22, 25 (1st Cir. 1991). Courts have generally ruled that placement in segregated housing does not constitute an atypical or significant deprivation of liberty rights, see Drayton v. Comm'r of Corr., 52 Mass. App. Ct. 135, 138-39, 751 N.E.2d 917 (2001) (finding that transfer to higher security prison did not constitute a protected liberty interest), and that whether any such hardship exists is determined by examining both the degree and the duration of restrictive confinement. Id. at 486. If the nature of the conditions of confinement do not present

---

[4] Although Rivera alleges a deprivation of a property interest in his Response to Order to Show Cause and Mici's Motion to Dismiss [Doc. No. 38], he only alleges a deprivation of liberty in his Amended Complaint [Doc. No. 32]. Accordingly, the court examines Rivera's due process claims under that framework only.

[5] The Amended Complaint [Doc. No. 32] does not state how long Rivera was in the restrictive housing unit. Mici reports that Rivera was returned to the general population after his appeal was resolved. See Mot to Dismiss Mem. 2, n. 2 [Doc. No. 34]. Based on that report, which Rivera does not dispute, Rivera was in restrictive housing for six and a half weeks.

"a dramatic departure from the basic conditions" of the inmate's sentence, the inmate does not have a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 485 (1995).

Here, Rivera's temporary placement in restrictive housing did not affect the duration of his sentence or subject Rivera to conditions "different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion." Sires v. Hefferman, 2011 WL 2516093, at *7 (D. Mass. June 21, 2011) (citing Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996)); see Benner v. Alves, 2022 WL 220314, at *1 (D. Mass. June 15, 2022) ("An inmate does not a possess a protected liberty interest in preventing a transfer to a more restrictive form of confinement.") (internal citations omitted); Hewitt v. Helms, 549 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). Rivera has not set forth any facts from which the court could reasonably infer that he endured an atypical and significant hardship during his unspecified time in the restrictive housing unit.

Rivera also argues that the placement in restrictive housing denied him access to privileges available in general housing.[6] Am. Compl. ¶ 10 [Doc. No. 32]. However, courts have found that inmates do not have a protected liberty interest even when their relocation results in the loss of access to vocational, educational, recreational, and rehabilitative programs. Howell, 2011 WL 3563159, at *15–16 (internal citations omitted). "By virtue of their convictions,

---

[6] Rivera raises the issue of restricted access to the law library in his Response to Order to Show Cause and Mici's Motion to Dismiss [Doc. No. 38] and asks the court to order the DOC to provide him access. However, inmates do not have a freestanding right to access the law library such that a restriction would bear on a protected interest. See Lewis v. Casey, 518 U.S. 343, 351 (1997) (stating that there is no "abstract, freestanding right to law library or legal assistance" for inmates).

inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." McKune v. Lile, 536 U.S. 24, 39 (2002). Further, "the placement of prisoners within the correctional system is a matter of discretion invoked for various reasons such as security, convenience and rehabilitation." Howell, 2011 WL 3563159 (quoting Meachum v. Fano, 427 U.S. 215, 228 (1976)).

Similarly, the loss of telephone privileges for 120 days is not a protected liberty interest. Prisoners do not have a constitutional right to telephone access. United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000); Riley v. O'Brien, No. 16-11064, at *8 (D. Mass. Sept. 2, 2016). Courts have consistently found that a temporary loss of telephone access does not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Doe v. Sanderson, 2018 WL 1586026, at *6 (D. Mass Mar. 30, 2018) (dismissing §1983 claim for denial of access to telephone); Renkowicz v. Mici, 2020 WL 636492, at *3 (D. Mass Feb. 11, 2020) (finding failure to state a claim based on DOC denying inmate access to use of the telephone). Although the court is sympathetic that limits on family contact caused Rivera emotional anguish, the Supreme Court has asserted that the right of association and maintenance of familial relationships may be limited for incarcerated individuals. Overton v. Bazzetta, 359 U.S. 126, 130 (2003). Thus, neither Rivera's temporary loss of telephone access nor the resulting inability to speak on the telephone with his family rise to the level of atypical and significant deprivation necessary to create a liberty interest.

Where Rivera was not deprived of a protected liberty interest, the court need not consider whether that deprivation was accomplished without due process. Howell, 2011 WL 3563159 at *15, 18.

2. Eighth Amendment

Rivera also alleges that his placement in segregated housing and the loss of his right to use the telephone amounted to cruel and unusual punishment, particularly where he was cut off from his support network and the restrictions caused him emotional distress. Am. Compl. ¶¶ 10, 23 [Doc. No. 32]. The Eighth Amendment of the United States Constitution, incorporated against the states through the Fourteenth Amendment, see Robinson v. California, 370 U.S. 660 (1962), provides in part that "nor [shall] cruel and unusual punishments [be] inflicted." U.S. Const. amend. VIII. To establish cruel and unusual punishment in the prison context, however, the inmate must demonstrate that "(1) a prison's conditions of confinement present a substantial risk of serious harm; and (2) prison officials acted with deliberate indifference to inmate health or safety." Torres v. Comm'r of Correction, 427 Mass. 611, 613–14, 695 N.E.2d 200 (Mass. 1998) (internal citations omitted).

As discussed, supra, restrictions on telephone access are a routine disciplinary practice that does not constitute impose an atypical or significant hardship on inmates. See Schmitt v. Mulvey, 2006 WL 516755 at *9 (D. Mass. Mar. 1, 2006); Restucci, 2009 WL 1704688 at *2; see also Libby v. Comm'r of Correction, 432 N.E.2d 488, 494 (Mass. 1982) (holding that for inmates, isolation and loneliness is not in and of itself unconstitutional under the Eighth Amendment). The First Circuit has observed a "widely shared disinclination to declare even very lengthy periods of segregated confinement beyond the pale of minimally civilized conduct on the part of prison authorities." Torres, 427 Mass. at 615 (quoting Jackson v. Meachum, 699 F.2d 578, 583 (1st Cir. 1983)); Tavares v. Gelb, 2016 WL 6518428 (D. Mass Nov. 2, 2016) ("The isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable."); see Santana v. Collazo, 714 F.2d 1172, 1179 (1st Cir. 1983) (stating that courts

have been reluctant to find prison isolation unconstitutional, "based either on the length of confinement or on the possibility that isolation might cause psychiatric deterioration"). In line with that observation, periods in segregation and the subsequent loss of access to the amenities generally do not meet the threshold for objectively serious harm or deprivation. Torres, 427 Mass. at 615 (citing Santana v. Collazo, 714 F.2d 1172, 1179 (1st Cir. 1983)).

Accordingly, Rivera does not sufficiently allege that he was subject to cruel and unusual punishment through the placement in restrictive housing nor the restrictions on phone access.[7]

V.     **Leave to Amend**

Rivera also requests that he be granted leave to amend his complaint to add new defendants. Response to Order to Show Cause 11 [Doc. No. 38]. His filing entitled Cause of Action [Doc. No. 39] also purports to add a claim for declaratory relief pursuant to M.G.L. ch. 231A to "enjoin and obtain a determination of the legality of the administrative practices and procedures employed by the Department of Correction Defendant in determining that Plaintiff committed a disciplinary infraction, as well as the legality of the sanctions imposed," Cause of Action 5-6 [Doc. No. 39].

Mici contends that Rivera has had ample time to add new parties and that it is improper for Rivera to add additional parties or claims at this stage of the proceedings. Reply to Response to Order to Show Cause [Doc. No. 41].

A party may amend its pleadings once as a matter of course within certain time limits. Fed. R. Civ. P. 15(a). In all other cases, a party may amend its pleading only with the consent of the other party or leave of the court. Id. Here, Rivera has already amended his pleading once and

---

[7] Where the court finds that Rivera has failed to state a claim as to Mici's supervisory liability or any constitutional deprivations, the court does not address Mici's qualified immunity arguments.

Mici does not consent to further amendment. Thus, Rivera may amend his pleading only with leave of court. Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely granted "when justice so requires." Nevertheless, a motion for leave to amend may be denied on various grounds, including futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962).

When leave to amend is sought under Rule 15(a) before discovery is complete and neither party has moved for summary judgment, futility is gauged by the same standard as legal sufficiency under Rule 12(b)(6). See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Here, where the court has concluded that Rivera does not allege a liberty interest to state a claim to relief under § 1983, the court finds that the addition of new defendants would be futile where Rivera fails to state a claim. Similarly, to the extent Rivera seeks to add a claim for declaratory judgment under M.G.L.ch. 231A, the court finds that a declaratory judgment is inappropriate where no actual live controversy exists. Rivera has not sufficiently alleged a deprivation of a protected interest, nor has he brought a facial challenge to the DOC policies. See Tocci Bldg. Corp. of New Jersey v. Virginia Sur. Co., 750 F. Supp. 2d 316, 320 (D. Mass. 2010) ("However, an action seeking a declaratory judgment must present an 'actual case or controversy' within the meaning of Article III of the United States Constitution.").

Accordingly, the court finds no cause to allow a further amendment, and Rivera's request for leave to amend is DENIED.

### VI. Conclusion

For the foregoing reasons, Mici's Motion to Dismiss [Doc. No. 33] is GRANTED.

IT IS SO ORDERED

September 26, 2023                                        /s/      Indira Talwani
                                                          United States District Judge

16